**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ROTHSCHILD BROADCAST DISTRIBUTION SYSTEMS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DISCOVERY COMMUNICATIONS, INC.,<br><br>　　　　Defendant. | Case No. 6:15-CV-227-RWS-JDL |

**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**
**PURSUANT TO 35 U.S.C. § 101**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF THE ISSUE.........................................................................2

III.   BACKGROUND ...............................................................................................3

      A.     Plaintiff's Complaint...............................................................................3

      B.     The '221 Patent .......................................................................................3

IV.   LEGAL STANDARDS .....................................................................................7

V.    ARGUMENT ....................................................................................................8

      A.     The Standard for Determining Eligible Patent Subject Matter ...............9

      B.     Recent Case Law Concerning Attempts to Patent Abstract Ideas ........10

      C.     The '221 Patent Is Not Directed to Patent-Eligible Subject Matter......14

            1.     The '221 Patent Is Directed to an Abstract Idea. .......................14

            2.     The '221 Claims Supply No Inventive Step That Would Transform Them into Patent-Eligible Claims............................................18

VI.   CONCLUSION................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Advanced Auctions, LLC v. eBay Inc.*,
    No. 13CV1612 BEN (JLB), 2015 WL 1415265 (S.D. Cal. Mar. 27, 2015)................... 12

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ..................................................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 7

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ............................................................................................ 9

*Bascom Research, LLC v. LinkedIn, Inc.*,
    No. 12–cv–06293–SI, 2015 WL 149480 (N.D. Cal. Jan. 5, 2015)................................. 13

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ................................................................................................ 7

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014)..................................................................... 19, 20

*Clear With Computers, LLC v. Altec Indus., Inc.*,
    No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ................................. passim

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
    21 F. Supp. 3d 758 (E.D. Tex. 2014)...................................................................... passim

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014)............................................................................ 19

*Cuvillier v. Sullivan*,
    503 F.3d 397 (5th Cir. 2007) ................................................................................ 7

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
    558 Fed. App'x 988 (Fed. Cir. 2014).................................................................... 20

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)............................................................................ 19

*DDR Holdings, LLC v. Hotels.com LP*,
    773 F.3d 1245 (Fed. Cir. 2014)................................................................... 12, 16

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. SACV 14-742-GW(AJWx), 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ............... 7

*Essociate v. Clickbooth.com, LLC*,
    No. SACV 13–01886–JVS (DFMx), 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015) ....... 12

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Hldgs.*,
    No. 1201736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) ................................. 8

*I/P Engine, Inc., v. AOL, Inc.*,
    576 Fed. App'x 982 (Fed. Cir. 2014) ............................................................................. 8

*In re Bilski*,
    545 F.3d 945 (2008) ...................................................................................................... 7

*In re TLI Commc'ns LLC Patent Litig.*,
    MDL No. 1:14md2534, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ............................. 13

*Lovelace v. Software Spectrum*,
    78 F.3d 1015 (5th Cir. 1996) ........................................................................................ 7

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    No. 2:13-CV-655, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) ................................. 2

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
    132 S. Ct. 1289 (2012) .................................................................................................. 9

*Morales v. Square, Inc.*,
    No. 5:13–cv–1092–DAE, 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ..................... 13

*Open Text S.A. v. Box, Inc.*,
    No. 13–cv–04910–JD, 2015 WL  269036 (N.D. Cal. Jan. 20, 2015) ............................. 13

*OpenTV, Inc. v. Apple, Inc.*,
    No. 14-cv-01622-HSG, 2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ...................... 12, 18

*Synopsys v. Mentor Graphics Corp.*,
    No. C 12–6467 MMC, 2015 WL 269116 (N.D. Cal. Jan. 20, 2015) .............................. 13

*Tenon & Groove, LLC v. Plusgrade S.E.C.*,
    No. 12-1118-GMS-SRF, 2015 WL 1133213 (D. Del. Mar. 11, 2015) ............................ 12

*UbiComm, LLC v. Zappos IP, Inc.*,
    No. 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013) .................................... 7

*Ultramercial, LLC v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................. passim

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*,
 18 F. Supp. 3d 831 (E.D. Tex. 2013) .................................................................................. 7

**STATUTES**

35 U.S.C. § 101 ............................................................................................................................... 9

## I.    INTRODUCTION

Defendant Discovery Communications, Inc. ("Discovery") moves to dismiss this patent infringement action because Plaintiff Rothschild Broadcast Distribution Systems, LLC has failed to state a claim upon which relief can be granted.  Specifically, the claims of Plaintiff's sole asserted patent, U.S. Patent No. 8,856,221 (the "'221 Patent"), are invalid under 35 U.S.C. § 101 as drawn to patent-ineligible subject matter—the abstract idea of storing and delivering media content.

To police against improper patents, the Supreme Court mandates a two-step analysis for patent eligibility:  First, a court evaluates whether the patent is drawn merely to an abstract idea in general.  Second, a court determines if the patent's claims contain any inventive step that takes the patent outside the realm of the abstract.  As shown below, the '221 patent is drawn to an abstract idea, and there is no inventive element on which the Plaintiff can rely to save this patent.

The '221 Patent, entitled "System and Method for Storing Broadcast Content in a Cloud-Based Computing Environment," generally describes a process in which one receives a request for media content (for example, a video), determines whether the video is available, and, if so, delivers it to the person who requested it.  This rote inventory checking, retrieval, and delivery procedure describes nothing beyond an abstract idea and could be performed by, for example, any video rental store employee who, at a customer's request, checks whether a particular video is in stock and, if so, provides it to the customer.  This is an everyday process of the retail world, applicable to any business that sells some kind of good, whether tangible or digital.  One receives a request, confirms availability of the product or acquires it, and arranges for delivery.  Moreover, the '221 Patent's effort to computerize this everyday process falls far short of adding an inventive concept that would set any meaningful bounds on the patent's purported monopoly

of the abstract idea.

Given this, the '221 patent is invalid and Plaintiff's complaint should thus be dismissed with prejudice.  Indeed, patents covering far more sophisticated business methods have been declared invalid by the Supreme Court, the Federal Circuit, and this Court.  *See, e.g., Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2352 (2014) (invalidating patent covering abstract idea of computerized settlement intermediation); *Ultramercial, LLC v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014) (invalidating patent covering abstract idea for ad-supported media delivery system); *Clear With Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *1, *4 (E.D. Tex. Mar. 3, 2015) (invalidating patent involving "abstract idea of creating a customized sales proposal for a customer"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *7, *14 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by designation) (invalidating patent that set forth "the general concept of currency exchange, as applied to loyalty awards"); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 761, 765 (E.D. Tex. 2014) (invalidating patent involving "abstract idea of inventory-based selling").

Accordingly, this Court should dismiss Plaintiff's complaint for failure to state a claim.

## II.    STATEMENT OF THE ISSUE

Whether the '221 Patent's claims—for systems and methods for storing and delivering media content—are directed to an abstract idea and, therefore, ineligible for a patent under Section 101 of the Patent Act, 35 U.S.C. § 101.

## III.    BACKGROUND

### A.    Plaintiff's Complaint

On March 19, 2015, Plaintiff filed its complaint for patent infringement against Discovery.  Separately, Plaintiff filed similar suits in this Court against nine other companies, asserting the same patent.[1]   All cases have been assigned to Judge Schroeder.   No case management order has issued in any of the cases.

Plaintiff claims to own or have the right to enforce the '221 Patent.  Compl., Dkt. No. 1 ¶ 7.  Plaintiff asserts that the '221 Patent's claims relate to a "'system for media content storage and delivery' comprising a variety of features" and a "'method for storing media content and delivering requested media content to a consumer device.'"  *Id.* ¶¶ 10, 12 (quoting '221 patent, claims 1 and 7).  Plaintiff further asserts that Discovery's systems "are 'a system for media content storage and delivery'" and that Discovery "practices a 'method for storing media content and delivering requested media content to a consumer device.'"  *Id.* ¶¶ 11, 13 (quoting '221 patent, claims 1 and 7).

### B.    The '221 Patent

The '221 Patent issued on October 7, 2014 and was initially assigned to its inventor, Leigh M. Rothschild.  Compl., Dkt No. 1, ¶ 7.  The '221 Patent claims priority to a provisional application filed on August 29, 2011.  '221 Patent 1:8-17.

The '221 Patent's abstract states that the patent covers "[a] system, method and device for media content storage and delivery," and that the invention relates to the field of "on-demand storage and delivery of media content."  *Id.* 1:25-27.  The "background" section of the '221

---

[1]  These cases are:  *Comcast Corp.*, 6:15-cv-226; *Vimeo, LLC*, 6:15-cv-232; *NGC Networks US, LLC*, 6:15-cv-228; *Univision Communications, Inc.*, 6:15-cv-229; *UStream, Inc.*, 6:15-cv-230; *VBrick Sys., Inc.*, 6:15-cv-231 (dismissed by stipulation); *Vudu, Inc.*, 6:15-cv-233; *Wistia, Inc.*, 6:15-cv-234 (notice of voluntary dismissal filed); and *Crunchyroll, Inc.*, 6:15-cv-238.

specification states that "[t]he widespread growth of communication networks and internet enabled consumer devices allow consumers to stream on-demand videos and music." *Id*. 1:31-33.  The specification continues:

> The on-demand video and music service is typically provided by large companies or second party distributors that store the media content for streaming to the consumer devices.  For example, a television company may maintain a television server that stores all television shows that are broadcast by the television company such that the consumer may stream the stored television show on the consumer device.  This requires the television company to store all or substantially all the shows broadcast by the television company, which requires a great deal of data storage and often comes at a significant cost to the television company.

*Id*. 1:33-44.

According to the specification, the innovation suggested by the '221 Patent is a system or method by which a broadcaster could store content that is most frequently requested by consumers on a "broadcast server" while keeping its entire programming catalog on a "remote server" (where, presumably, it costs less to store content).  *Id*. 3:47-49.  If a consumer requests content that is already on the broadcast server, the system can deliver the content immediately. If the consumer requests content that is only on the remote server, the system can put the content in a queue for release onto the broadcast server for delivery to the consumer.  But the issued claims, which control here, are not so limited, and broadly suggest an even more abstract concept—a  system "configured to receive a request" for "storage" or "delivery" of "media content" that is "further configure[d] to initiate delivery of the requested media content to the consumer device." *E.g.*, *id*. 10:44-67.

The '221 Patent contains 13 claims—two of which (claims 1 and 7) are independent claims.  Both independent claims are directed to the same general idea of, upon a consumer's request, checking to see whether an item of media content is available, and both claims feature nearly identical limitations (as italicized):

| 1. A system for media content storage and delivery, the system comprising: | 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: |
|---|---|
| a first server, the first server including: | |
| a first receiver, the first receiver configured to *receive a request message including media data indicating requested media content and a consumer device identifier corresponding to a consumer device*; and | *receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device*; |
| a first processor in communication with the first receiver, the first processor configured to *determine whether the consumer device identifier corresponds to a registered consumer device;* | *determining whether the consumer device identifier corresponds to a registered consumer device;* and |
| if the first processor *determines that the consumer device identifier corresponds to the registered consumer device, then:* the first processor is further configured to *determine whether the request message is one of a storage request message and a content request message*; | if it is *determined that the consumer device identifier corresponds to the registered consumer device, then:* *determining, whether the request message is one of a storage request message and a content request message;* and |
| *if the request message is the storage request message, then* the processor is further configured to *determine whether the requested media content is available for storage;* and | if the request message is the storage request message, then determining whether the requested media content is available for storage; and |
| *if the request message is the content request message, then* the processor is further configured to *initiate delivery of the requested media content to the consumer device*; | if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; |
| *wherein the media data includes time data that indicates a length of time to store the requested media content; and* | *wherein the media data includes time data that indicates a length of time to store the requested media content; and* |
| *the first processor is further configured to determine whether the requested media content exists; and* | *the first processor is further configured to determine whether the requested media content exists; and* |
| *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* | *if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device.* |

The eleven dependent claims (claims 2-6, 8-13) add insubstantial limitations to the corresponding independent claims 1 and 7:

- Providing a message confirming that requested media content is available for storage (claims 2, 8).

- Providing a message prompting a user to register a consumer device (claim 3).

- Providing memory to store consumer user data including consumer device data (claims 4, 9).

- Verifying that a consumer device identifier is associated with a particular consumer (claims 5, 11).

- Transmitting requested media content after verifying that a consumer device identifier corresponds to a registered consumer device (claim 6).

- Informing the consumer of the cost of the requested media content (claim 12) and doing the same where the cost does not vary based upon the number of times the content is delivered (claim 13).

The '221 Patent reflects no invention of any new software or hardware.  Instead, the claimed systems and methods operate with well-known computer components.  The patent states that the purported invention can be put into practice using "[a]ny kind of computing system," and that "[a] typical combination of hardware and software could be a specialized or general purpose computer system."  *Id*. 10:12-19.  A consumer device "may include wired or wireless devices such as mobile phones, personal digital assistant devices, personal computers, laptop computers, tablet computers, digital video recorders, televisions, digital versatile disc players, among other devices that may communicate via network."  *Id*. 3:56-60.  The processors may include a "central processing unit (CPU) for executing computer program instructions stored in memory, as is well known in the art."  *Id*. 3:65-67.  "Memory may include non-volatile and volatile memory."  *Id*. 4:1-3.  Non-volatile memory "may include a hard drive, memory stick, flash memory and the like," and "volatile memory may include random access memory and others known in the art."  *Id*. 3:3-5.  The various items of hardware communicate "via network using

communication protocols known in the art, *e.g.*, Internet Protocol." *Id*. 3:50-52.

## IV.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted).  In deciding a Rule 12(b)(6) motion, courts may consider facts alleged in the complaint as well as documents attached to or incorporated into the complaint.  *See Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996).  Although factual allegations are taken as true, this principle "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Whether a patent is drawn to patentable subject matter is an appropriate issue for a motion to dismiss.  *See, e.g., Ultramercial, LLC v. Hulu, LLC*, 772 F.3d 709, 711-12 (Fed. Cir. 2014) ("[W]e conclude that the '545 patent does not claim patent-eligible subject matter and accordingly affirm the district court's grant of WildTangent's motion to dismiss."); *In re Bilski*, 545 F.3d 945, 950 (2008) (patent eligibility is "a threshold inquiry" for court to decide), *aff'd, Bilski v. Kappos*, 561 U.S. 593 (2010); *Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *4 (E.D. Tex. Mar. 2, 2015) (granting Rule 12(b)(6) motion to dismiss based upon patent ineligibility under Section 101); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *6 (C.D. Cal. Sept. 4, 2014) (same); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, 18 F. Supp. 3d 831, 834 (E.D. Tex. 2013) (same); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029-RGA, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (same)).

In deciding patentability, a court need not review all claims, but only those that are

representative of the claimed invention as a whole.  *See Ultramercial*, 772 F.3d at 712 (reviewing only claim 1 as "representative" and noting that "the other claims of the patent are drawn to a similar process" and therefore "suffer from the same infirmity as claim 1 and need not be considered further").  Nor need the court formally construe the patent's claims in order to decide patentability.  *See id*. ("The district court granted WildTangent's pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the claims."); *see also id.* at 714-15 (examining patentability "[w]ithout purporting to construe the claims"); *Clear with Computers*, 2015 WL 993392, at *3 ("[T]he particular facts of this case indicate that claim construction is unnecessary."); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Hldgs.*, No. 1201736-LPS-CJB, 2014 WL 4379587, at *1 (D. Del. Sept. 3, 2014) (deciding Section 101 motion prior to claim construction is appropriate where no disputed areas of fact are relevant to motion).  As one Federal Circuit judge has observed, "[p]atent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation."  *I/P Engine, Inc., v. AOL, Inc.*, 576 Fed. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring).

## V.   ARGUMENT

The Supreme Court employs a two-step process to determine whether a patent is directed to eligible subject matter.  *See Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014).  The first step asks whether the patent's claims are directed to patent-ineligible subject matter such as an abstract idea.  *Id.*  If so, the second step asks whether the patent's claims contain any inventive step that takes the patent outside of the realm of the abstract.  *Id.*  As shown below, the '221 Patent fails the Supreme Court's test because its claims (1) are directed to an abstract idea—storing and delivering media content; and (2) do not contain any inventive concept that

would otherwise prevent the claims' monopolization of this abstract idea.

### A.    The Standard for Determining Eligible Patent Subject Matter

Section 101 of the Patent Act defines the subject matter eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (alterations and internal quotation marks omitted).   Animating this limitation is the Court's concern is that laws of nature, natural phenomena, and abstract ideas serve as basic tools for all scientific and technological work and that "monopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it." *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1293 (2012).

The Supreme Court has articulated a two-step framework for determining patentable subject matter. *See Alice*, 134 S. Ct. at 2355.  *First*, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts," such as an abstract idea.  *Id*. *Second*, if the claims are so directed, the court must then consider "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id*. (quoting *Mayo*, 132 S. Ct. at 1297).   This second step searches for an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id*. (alteration in original)

(quoting *Mayo*, 132 S. Ct. at 1294).

**B.      Recent Case Law Concerning Attempts to Patent Abstract Ideas**

In recent years, the Supreme Court has strongly signaled that the federal courts should root out patents that are unworthy of the limited monopoly conferred by the patent laws, including so-called business-method patents that purport to cover basic practices in the commercial marketplace.   In *Bilski*, the Court held that a patent directed to a "method for hedging against the financial risk of price fluctuations" was invalid for claiming an abstract idea—namely the "fundamental economic practice" of hedging.   *Alice*, 134 S. Ct. at 2355-56 (citing *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).   In *Alice*, the Court reviewed a patent that involved a "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk.   *Id.* at 2356.   The Court had little trouble concluding that, as with risk hedging, the concept of "intermediated settlement" is a fundamental economic practice that falls "squarely within the realm of 'abstract ideas.'"   *Id.* at 2357.

Moving onto the second step, the Court stated that tying the idea of intermediated settlement to a computer could not supply the necessary inventive concept to save the patent. The Court observed that its cases "demonstrate that the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."   *Id.* at 2358. "Stating an abstract idea while adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result."   Consequently, if a patent merely "implement[s] an abstract idea on a computer, that addition cannot impart patent eligibility."   *Id.* at 2358 (citation, alterations, and internal quotation marks omitted).

None of the things performed by computers in the *Alice* patent was sufficient to save it. For example, the Court held that the use of a computer to "create and maintain 'shadow'

accounts amounts to electronic recordkeeping," performing "one of the most basic functions of a computer." *Id*. at 2359.   Similarly, "the use of a computer to obtain data, adjust account balances, and issue automated instructions" were all "well-understood, routine, conventional activit[ies]" in the computer industry.   *Id*.   As a result, "none of the hardware recited by the system claims offers a meaningful limitation beyond generally linking the use of the method to a particular technological environment, that is, implementation via computers."   *Id*. at 2360 (alterations and internal quotation marks omitted).

Several months after *Alice*, the Federal Circuit decided *Ultramercial, Inc. v. Hulu, LLC*, which involved a patent claiming "a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange for viewing an advertisement, and the advertiser pays for the copyrighted content."  772 F.3d 709, 712 (Fed. Cir. 2014).   At step one of the *Alice* analysis, the court found that "[t]he process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the ad all describe an abstract idea, devoid of a concrete or tangible application." *Id*. at 715.

Moving on to step two of the *Alice* inquiry, the Federal Circuit found that the "[t]he majority of those [method] steps comprise the abstract concept of offering media content in exchange for viewing an advertisement," and that appending "routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Id*. at 715-16.  "Instead, the claimed sequence of steps comprises only conventional steps, specified at a high level of generality."   *Id*. at 716 (internal quotation marks

omitted).  In addition, the Federal Circuit held that merely applying an idea to the Internet—even where one is the first to do so—is insufficient where the underlying problem to be solved is not unique to the Internet.  *Id*.  Instead, to survive, claims must be "necessarily rooted in computer technology in order to overcome a problem *specifically arising in the realm of computer networks*" and not merely claiming (as in this case) a "computer network operating in its normal, expected manner" or reflecting "merely the routine or conventional use of the Internet."  *DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1257-59 (Fed. Cir. 2014) (emphasis added).  In short, one cannot simply take routine and conventional ideas, and patent the use of those ideas on a digital medium.

In the wake of *Alice* and *Ultramercial*, district courts around the country have rejected numerous patents directed to abstract methods and systems.  *See*, *e.g.*, *OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622-HSG, 2015 WL 1535328, *4 (N.D. Cal. Apr. 6, 2015) (patent claiming "use of identification codes to organize and transmit confidential information" held drawn to abstract idea); *Advanced Auctions, LLC v. eBay Inc.*, No. 13CV1612 BEN (JLB), 2015 WL 1415265, at *5 (S.D. Cal. Mar. 27, 2015) ("The patent itself describes implementing an existing abstract idea—an auction—refined for implementation on the Internet."); *Tenon & Groove, LLC v. Plusgrade S.E.C.*, No. 12-1118-GMS-SRF, 2015 WL 1133213, at *2 (D. Del. Mar. 11, 2015) ("computer-implemented method for concurrent optimization of value in a transaction between at least two entities" held an abstract idea); *Essociate v. Clickbooth.com, LLC*, No. SACV 13–01886–JVS (DFMx), 2015 WL 1428919, at *5 (C.D. Cal. Feb. 11, 2015) ("steps for how a merchant can gain access to customers from a referring entity without having to compete with other merchants for those same customers" held merely to describe abstract idea); *In re TLI Commc'ns LLC Patent Litig.*, MDL No. 1:14md2534, 2015 WL 627858, at *8 (E.D. Va. Feb. 6,

2015) ("[T]he '295 patent claims at issue are clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs."); *Open Text S.A. v. Box, Inc.*, No. 13–cv– 04910–JD, 2015 WL  269036, at *3 (N.D. Cal. Jan. 20, 2015) ("Shorn of its implementation-specific fleece, the claim is directed at providing a method for people to collaborate and share information without the need for specialized software or expertise."); *Synopsys v. Mentor Graphics Corp.*, No. C 12–6467 MMC, 2015 WL 269116, at *3 (N.D. Cal. Jan. 20, 2015) ("[T]he asserted claims are directed to the process of interference, which is fundamental to IC design and can be performed mentally."); *Bascom Research, LLC v. LinkedIn, Inc.*, No. 12–cv– 06293–SI, 2015 WL 149480, at *8 (N.D. Cal. Jan. 5, 2015) (patent described "abstract idea of creating, storing and using relationships between objects"); *Morales v. Square, Inc.*, No. 5:13– cv–1092–DAE, 2014 WL 7396568, at *7 (W.D. Tex. Dec. 30, 2014) ("Claim 6 of the '589 patent encompasses an abstract idea because it describes the fundamental concept of relaying a signal containing the sender's identity.").

Two recent decisions in this district are particularly instructive.  First, in *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758 (E.D. Tex. 2014) ("*Clear with Computers I*"),[2] the Court reviewed a patent titled, "Inventory Sales System and Method," claiming the following steps:  "(1) receiving a product query, (2) determining the availability of products and associated options in inventory, (3) preparing a list of available options, and (4) presenting the list." *Clear with Computers I*, 21 F. Supp. 3d at 761, 765.  Judge Davis found that (1) the patent "involves the abstract idea of inventory-based selling," and (2) the patent's use of a "computer system with a configuration engine" did not meaningfully limit the claims as the steps "can be performed entirely by a human, mentally or with pencil and paper." *Id*.

---

[2]   *Clear with Computers I* was decided before *Alice* and *Ultramercial*, but anticipates the analytical framework used in both cases.

Second, in *Clear with Computers, LLC v. Altec Industries, Inc.*, No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ("*Clear with Computers II*"), the Court reviewed a patent titled, "Electronic Proposal Preparation System for Selling Computer Equipment and Copy Machines," claiming a "computer-implemented method to (1) present questions to, and receive answers from, a customer regarding products for sale; (2) based on at least one answer, select a picture of the product, a picture of the product environment, and a textual product description; and (3) put the pictures and text into a single visual output as part of a customized proposal for sale." *Clear with Computers II*, 2015 WL 993392, at *4.   Judge Gilstrap found that (1) the patent was drawn to the "abstract idea of creating a customized sales proposal for a customer," and (2) the computerization of the patent's steps added nothing because "[t]he steps performed by the claimed computer elements are functional in nature and could easily be performed by a human." *Id.*

Notably, in both *Clear with Computers I* and *II*, the Court invalidated the patents at the pleadings stage without conducting claim construction.  *See Clear with Computers I*, 21 F. Supp. 3d at 762, 764; *Clear with Computers II*, 2015 WL 993392 at *3.   Here, as in *Clear with Computers II*, claim construction is unnecessary because "the claim language is relatively simple."  2015 WL 993392, at *3.

C.      **The '221 Patent Is Not Directed to Patent-Eligible Subject Matter.**

1.      **The '221 Patent Is Directed to an Abstract Idea.**

The '221 Patent plows similar ground as the patent at issue in *Ultramercial*:  It describes a method and system for storing and delivering media content.  Plaintiff itself concedes the abstract nature of the '221 claims when it alleges that the claims are drawn to (1) a "system for media content storage and delivery" and a "method for storing media content and delivering

requested media content to a consumer device."  Comp., Dkt No. 1, ¶ 12; *see also* '221 Patent, abstract ("A system, method, and device for media content storage and delivery.").

Independent claims 1 and 7, which are representative of the claimed invention, recite the following steps:

(a)    Receiving messages from consumers requesting content;

(b)    Confirming that the consumer is using a registered consumer device;

(c)    Determining whether the consumer has sent a request for immediate delivery or for storage;

(d)    Determining whether the requested content is available for either immediate delivery or storage;

(e)    Checking whether there are restrictions on delivery to the consumer device; and

(f)    Delivering the content if available.

These steps describe, at a high level of generality, a process for receiving a consumer request for an item, reviewing the request to determine whether it contains certain information, and delivering the requested item.  This claims nothing more than the ubiquitous business practice of checking one's inventory to see if an item requested by a customer is in stock.[3]  None of this is unique to online media; indeed, these familiar practices are integral to every business that involves the selling of some kind of good, whether digital or physical.[4]  *See, e.g.*, *Clear with Computers I*, 21 F. Supp. 3d at 765 (concept of "selling goods from inventory" is an abstract business idea).  The generic inventory-checking process claimed by Plaintiff is at least as

---

[3]  Similarly, the dependent claims mimic commonplace and common-sense business practices like telling a customer if an item is available or what its price is.  *See* '221 patent, claims 2, 8, 12.

[4]  It is not necessary at this step to determine whether the patent claims anything that departs from traditional business methods.  *See Ultramercial*, 772 F.3d at 715 ("We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete.  In any event, any novelty in implementation of the idea is a factor to be considered only in the second step of the *Alice* analysis.").

abstract, if not more so, than the advertising-supported media-delivery claims in *Ultramercial*[5] or the inventory-based selling claims in *Clear with Computers I* (*see* 21 F. Supp. 3d at 765).  And like the *Ultramercial* claims, the '221 claims address a common business problem and are not "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."  *DDR Holdings*, 773 F.3d at 1257-58.

Tellingly, all of the steps of the '221 Patent could be performed by a video rental store clerk:

| Claim 7 Language[6] | As Performed by a Human |
|---|---|
| 7. A method for storing media content and delivering requested media content to a consumer device, the method comprising: | A clerk at a video rental store: |
| receiving a request message including media data indicating requested media content and a consumer device identifier corresponding to the consumer device; | Accepts requests from customers for videos, wherein the requests contain certain information including the title of the video, how long the customer wants to retain it, and an identifier for the customer (*e.g.*, the video rental store's membership card).[7] |

---

[5]  The steps of the *Ultramercial* patent are:  "(1) receiving copyrighted media from a content provider; (2) selecting an ad after consulting an activity log to determine whether the ad has been played less than a certain number of times; (3) offering the media for sale on the Internet; (4) restricting public access to the media; (5) offering the media to the consumer in exchange for watching the selected ad; (6) receiving a request to view the ad from the consumer; (7) facilitating display of the ad; (8) allowing the consumer access to the media; (9) allowing the consumer access to the media if the ad is interactive; (10) updating the activity log; and (11) receiving payment from the sponsor of the ad.  772 F.3d at 714-15; *see also id.* at 712 (reproducing full claim language).

[6]  For simplicity, only the method claim is analyzed here, but the analysis for the corresponding system claim would yield the same result.  Also, the corresponding system claim is linked to and falls with the method claim.  To allow the system claim, while invalidating the method claim, would permit applicants to preempt abstract ideas by the mere use of patent-drafting conventions.  *See Alice*, 134 S. Ct. at 2360 ("This Court has long warn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1294) (internal quotation marks omitted)).

[7]  For the purposes of a Section 101 inquiry (but not for infringement or other defenses), checking to see whether a consumer is using a registered device (as the claim requires) is an idea at the same level of abstraction as checking to see whether a consumer has a membership.

| determining whether the consumer device identifier corresponds to a registered consumer device; and | Checks the customer's membership card against a list of approved members without any late fees. |
|---|---|
| if it is determined that the consumer device identifier corresponds to the registered consumer device, then:<br><br>determining, whether the request message is one of a storage request message and a content request message; and | If the clerk determines that the customer is on the list of approved members, then the clerk will determine whether the customer is asking for a video that is available for rental now or to back-order a video that isn't on the shelves. |
| if the request message is the storage request message, then determining whether the requested media content is available for storage; and | If the customer wants to back-order a video, the clerk will check a list of videos from the company's warehouse to see if the video can be back-ordered. |
| if the request message is the content request message, then initiating delivery of the requested media content to the consumer device; | If the customer wants a video that is in stock, then the clerk will give the video to the customer for rental. |
| wherein the media data includes time data that indicates a length of time to store the requested media content; and | The clerk is able to receive information from customers about how long they would like the store to stock the video before returning it to the warehouse. |
| the first processor is further configured to determine whether the requested media content exists; and | The clerk checks the shelves of the store and the list of warehoused videos to see if the video rental store has the video anywhere. |
| if the processor determines that the requested media content exists, the processor is further configured to determine whether the requested media content is available and whether there are restrictions associated with the requested media content that prevent the requested media content from being delivered to the consumer device. | If the clerk sees that the video rental store has the video somewhere, the clerk will determine whether the video is available and whether there are any restrictions on the membership that would preclude the rental of the video to the customer (*e.g.*, no restricted movies for members under 17; no rentals to customers who have not paid late fees). |

That a human being can perform all of the claim limitations confirms that the '221 claims are drawn to an abstract idea.  *See, e.g.*, *Clear with Computers I*, 21 F. Supp. 3d at 767 ("[A] store clerk, armed with only a pencil and paper, can receive a question about men's basketball sneakers, determine the options available (color, brand, size, etc.) and the availability of those options in inventory, prepare a list of those available options, and present that list to the customer."); *Clear with Computers II*, 2015 WL 993392, at *4 ("The claims essentially propose

that, instead of a human salesman asking customers about their preferences and then creating a brochure from a binder of product pictures and text and using a rolodex to store customer information, a generic computer can perform those functions."); *OpenTV, Inc.*, 2015 WL 1535328, at *4 (considering whether claims can be "performed in the human mind[] or by a human using pen and paper" to determine whether they are directed to abstract ideas) (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)).

Accordingly, the claims of the '221 Patent are directed to an abstract idea—the idea of storing and delivering media content.

### 2.     The '221 Claims Supply No Inventive Step That Would Transform Them into Patent-Eligible Claims.

As demonstrated above, the '221 claims are drawn to the abstract idea of storing and delivering media content—the equivalent of checking to see if a video is available for a customer.  The claim language does not "do significantly more than simply describe that abstract method."   *Ultramercial*, 772 F.3d at 715.   The claim elements do not, individually or in combination, require anything but a general-purpose computer to perform the various steps and "add nothing of practical significance to the underlying abstract idea."  *Id.* at 716.

Individually, each step of the claims of the '221 Patent merely describes a component of the abstract idea—checking to see if content is available—with the instruction that the step be performed by a generic computer.  But "adding the words 'apply it with a computer' simply combines those two steps, with the same deficient result."  *Alice*, 134 S. Ct. at 2350; *Ultramercial*, 772 F.3d at 715 (claims that "simply instruct the practitioner to implement the abstract idea with routine, conventional activity" held insufficient).

The '221 Patent's computerized steps—receiving input (receiving the consumer request for media content), sorting information (determining whether the request is one for media

content or media storage), checking information against a list or database (determining whether a consumer device identifier is linked to a registered consumer device), and providing output (delivering requested media content to a consumer)—all describe well-known computer functions. *See Alice*, 134 S. Ct. at 2359 (using a computer to "obtain data, adjust account balances, and issue automated instructions" all involve "well-understood, routine, conventional activities previously known to the industry"); *Ultramercial*, 772 F.3d at 716 ("[R]outine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("The computer functionality is generic—indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("[D]etecting the presence of a particular one of said defined set of symbols on a hard copy document" merely described "generic optical character recognition technology."); *CyberSource Corp.*, 654 F.3d at 1370 (holding "mere collection and organization of data" insufficient).   Consequently, all of the computer components listed by the '221 claims are "purely functional and generic." *Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims.").[8]

---

[8]  The '221 Patent itself confirms that the claimed invention can be realized using "*[a]ny kind* of computing system" and that a "typical" implementation will not require anything more than a "*general purpose* computer system." '221 Patent, 10:12-19 (emphases added).  Further, because the '221 claims are "not tied to any particular novel machine or apparatus, [but] only a general purpose computer," they also fail the Federal Circuit's pre-*Alice* machine-or-transformation test. *See Ultramercial*, 772 F.3d at 716.  While passing this test is no longer conclusive, failing it confirms that a patent is directed to unpatentable subject matter. *See id.* at 717.

Nor does the ordered combination of the steps of the '221 Patent add anything because their sequence—"obtaining, separating, and then sending information"—"follow[s] from the underlying idea of categorical information storage [and delivery]." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 993 (Fed. Cir. 2014).  Indeed, there is no other way to logically perform the invention other than in the sequence recited in its claims:  One obviously must receive a consumer request for an item before checking to see if it is available, and one must check on availability before delivering the item.

Finally, the '221 Patent's purported limitation to online media places no meaningful limitation on its abstract idea.  The '221 claims merely invoke the Internet and on-demand media generally to take advantage of "[t]he widespread growth of communication networks and internet enabled consumer devices allow[ing] consumers to stream on-demand videos and music."  '221 Patent 1:31-33.  Any such attempt to limit the covered systems to a "particular technological environment" is insufficient to confer patentability.  *Alice*, 134 S. Ct. at 2350; *Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility."); *buySAFE, Inc.*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").  Moreover, as the patent itself acknowledges, on-demand streaming via the Internet was widespread long before the patent.  *See* '221 Patent 1:31-2:16.

In sum, the '221 Patent's claims add "no meaningful limitations to convert the abstract idea into patent-eligible subject matter."  *Ultramercial*, 772 F.3d at 714.

## VI.    CONCLUSION

As shown above, the claims of the asserted '221 Patent are directed to an abstract idea and are ineligible for patent protection pursuant to 35 U.S.C. § 101.  Accordingly, Discovery respectfully requests that this Court dismiss Plaintiff's complaint for patent infringement with prejudice.

Dated: May 20, 2015

Respectfully submitted,

Michael C. Smith
Texas Bar No. 18650410
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
113 East Austin Street
P.O. Box 1556
Marshall, TX 75671
Telephone: (903) 938-8900
Facsimile: (903) 767-4620
Email:  michaelsmith@siebman.com

**ATTORNEYS FOR DEFENDANT
DISCOVERY COMMUNICATIONS, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 20th day of May, 2015.

Michael C. Smith